IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PHILLIP C. COLLICOTT,                        3:12-CV-01443-BR

       Plaintiff,                      OPINION AND ORDER

v.

SNAKE RIVER DEPARTMENT OF
CORRECTIONS ADMINISTRATION;
SUP. NOOTH, MARK; and OFFICER
FRANK SERRANO,

       Defendants.


PHILLIP CURTIS COLLICOTT
#18822244
Snake River Correctional Institution
777 Stanton Boulevard
Ontario, OR 97914-8335

       Plaintiff, *Pro Se*

ELLEN ROSENBLUM
Attorney General
SHANNON M. VINCENT
Assistant Attorney General
1162 Court Street N.E.
Salem, OR 97301
(503) 947-4700

       Attorneys for Defendants


1 - OPINION AND ORDER

**BROWN, Judge.**

This matter comes before the Court on Defendants' Motion (#41) for Summary Judgment.  For the reasons that follow, the Court **GRANTS** Defendants' Motion.

<u>BACKGROUND</u>

Plaintiff Phillip C. Collicott is an inmate at Snake River Correctional Institution (SRCI).

On November 12, 2011, an SRCI correctional officer searched Plaintiff's cell and found a loose razor blade in Plaintiff's hygiene bag, a broken pencil sharpener with its blade missing, and a roll of string not in its original form.  The officer also found state-issued "thermals," shirts, and towels that were torn and tucked under the seat of the stool at the desk in Plaintiff's cell.

As a result of the search, Plaintiff was provided on November 13, 2011, with a Misconduct Report charging him with violation of Oregon Department of Corrections (ODOC) Rules 1.05 (Property 1), 4.01 (Disobedience of an Order 1), 1.11 (Contraband 2), and 1.06 (Property 2).  The Misconduct Report contained the following description of Plaintiff's violations:

> On November 12, 2011 at approximately 6:00pm, I was conducting a cell search in cell 27 in Housing Unit 3H.  During the search, I found a loose razor blade that appeared to be removed from a pencil sharpener above the desk marked "A", which is

> assigned to Inmate Collicott S1D#1822244.  The
> blade was found inside a hygiene bag.  Along with
> the blade, I found a roll of string that was not
> in it's [*sic*] original form and the pencil
> sharpener with the  blade removed from it.
>
> Later on in the search, I found multiple state
> issued items that were torn and destroyed.  These
> items were thermals, shirts and towels.  The
> shirts were found tucked under the seat of the
> stool at desk "A" and the thermals and towels were
> found in drawer marked "A", which is assigned to
> Inmate Collicott SID# 1822244.  All of these items
> were state issued and the damaged property was
> confiscated.

Decl. of Frank Serrano, Ex. 2 at 5.  On November 13, 2011,

Plaintiff was also provided with a Notice of Hearing, Notice of

Inmate Rights in a Hearing, and the ODOC Rules of Prohibited

Conduct in preparation for a hearing on Plaintiff's misconduct.

On November 22, 2011, Hearings Officer Frank Serrano held a

disciplinary hearing on Plaintiff's Misconduct Report.  At the

hearing Plaintiff acknowledged receiving the Notice of Hearing,

Notice of Inmate Rights in a Hearing, and the ODOC Rules of

Prohibited Conduct.  Plaintiff, however, advised Officer Serrano

that he did not understand his rights or the rules violations

with which he was charged.  Serrano Decl., Ex. 3 at 1-2.

Accordingly, Officer Serrano explained to Plaintiff the hearings

procedure and Plaintiff's rights as follows:

> During this hearing, I'm going to explain to you
> what you've been charged with, then make sure you
> understand each of the alleged rule violations.
> I'm going to present you with all the evidence
> that's been presented to me thus far, allow you to
> present your evidence, make a statement.  During

3 - OPINION AND ORDER

> the hearing, you can request witnesses or
> investigation if the information sought either
> absolves you of wrongdoing or substantially
> mitigates the rule violations against you.  If it
> does neither of those two, I may deny your
> request.  Ultimately, I'll make a finding in this
> case and find whether or not you violated the rule
> Or to violate the rule and there's a number of
> ways do so.  And I'll explain to those if I do,
> obviously, make that decision.  If I find you in
> violation, I'm going to recommend sanctions in
> accordance with the grid, major violation grid,
> based on your last two years of . . . of activity.
> Ultimately, you can request a review of my
> findings through the Superintendent's office, or
> functional unit Manager's office.

Serrano Decl., Ex. 3 at 2.  Officer Serrano explained the charged

violations against Plaintiff as follows:

> Property 1 has to do with destruction of property,
> misuse of property, tampering with, defacing.
>
> * * *
>
> [Disobedience of an Order 1 is] when you overtly
> refuse to comply with [a] valid directive, whether
> it's written or verbal.
>
> * * *
>
> [Contraband 2 is] [p]ossessing any contraband
> which creates a threat to the safety, security,
> orderly operation of the facility.

Serrano Decl., Ex. 3 at 3.  Plaintiff stated he understood

Property 2,[1] and Serrano did not give Plaintiff any further

explanation of that violation.  Officer Serrano read the

---

[1] ODOC Rules of Prohibited Conduct define a Property 2
violation as destruction, alteration, abuse, damage, defacement,
misuse, tampering with, or waste of materials of property or the
failure to properly protect and to produce property issued to an
inmate in a timely manner.  Or. Admin. R. 291-105-0015(1)(c).

4 - OPINION AND ORDER

Misconduct Report to Plaintiff on the record, and Plaintiff testified as to why he had in his cell the items noted in the Misconduct Report.

With respect to the state-issued thermals, shirts, and towels, Plaintiff testified they were cleaning rags issued to inmates in the housing unit every morning.  Plaintiff also testified he did not speak to the correctional officer who conducted the search so he was unable to explain to the officer that they were cleaning rags.  Officer Serrano concluded there was insufficient evidence to support violations of Rules 1.11 (contraband 2), 4.01 (Disobedience of an Order 1), and 1.06 (Property 2).  Officer Serrano, therefore, dismissed the violations of Rules 1.11 and 4.01 on the ground that there was insufficient evidence that Plaintiff possessed "any contraband 2" items or disobeyed any order.  Serrano Decl., Ex. 2 at 1. Officer Serrano also dismissed the violation of Rule 1.06 (Property 2) without prejudice and instructed the correctional officer to resubmit a misconduct report if an investigation established the rags were made from items issued to Plaintiff.

With respect to the razor blade, Officer Serrano and Plaintiff engaged in the following exchange at the hearing:

>        MR. SERRANO:   Regarding the blade, what's
> the story?
>
>        MR COLLICOTT:  The blade?  That pencil
> sharpener, it was broken, but it wasn't . . . it
> wasn't apart.  In fact, I have . . .

MR. SERRANO:   Why did the officer find it apart?

MR. COLLICOTT: I don't know why he found it apart.  But this, when I came back, I found this in my room and I believe this is what holds it together.[2]

MR. SERRANO:   It could be.  That's my question, is why was it apart?  You don't know why?

MR. COLLICOTT: Well, other than it being a piece of crap and probably breaking?

MR. SERRANO:   So, the only question would be is why wouldn't you turn it in if it's broken? [Inaudible] a correctional facility, you have a loose blade, this can be used as weapons or a [inaudible].

MR. COLLICOTT: I didn't . . . didn't think about that through [*sic*], you know?  That's . . . I have $50.00 worth of pencils.  I mean, obviously I sharpen pencils with it.

Serrano Decl., Ex. 3 at 5-6.  At the hearing Officer Serrano ruled:

Regarding the Property I . . ., subsection 4 of the Property I rule is an altered or unauthorized blade.  This would be an unauthorized blade, or even an altered blade for that matter, because it gets . . . because it comes from the pencil sharpener.  I did find that you did violate Rule 1.05, Property I, for that reason.

Serrano Decl., Ex. 3 at 7.

On November 22, 2011, Officer Serrano issued a Finding of Fact, Conclusion, and Order in which he reiterated his

---

[2] It appears from Plaintiff's Response that Plaintiff showed Officer Serrano a rivet that Plaintiff found when he returned to his cell.

6 - OPINION AND ORDER

conclusions regarding Plaintiff's violation of Rule 1.05 and
recommended a sanction of the loss of privileges from
November 22, 2011, through November 28, 2011, and a $25.00 fine.
On November 22, 2011, Officer Serrano also completed a Loss of
Privileges Sanction Order in which he noted from November 22
through November 28, 2011, Plaintiff should lose "all designated
leisure time activities" including

> Hobby Shop, Dayroom (movies/television), Canteen,
> Recreation Yard/outside activities, Cardroom,
> Multipurpose Building/Inside activities, Picture-
> taking program, Library – recreation reading
> program (except Legal Library), Telephone, All
> inmate organization meetings (except AA/NA)

Serrano Decl., Ex. 2 at 5.

On November 30, 2011, Officer Serrano's Finding of Fact,
Conclusion, and Order was affirmed by the SRCI Acting
Superintendent.

On January 11, 2012, Plaintiff requested an amendment to the
final order to remove, among other things, the $25.00 fine.  The
SRCI Acting Superintendent upheld the final order.

On August 8, 2012, Plaintiff filed a *pro se* Complaint in
this Court against the SRCI Department of Corrections
Administration, SRCI Superintendent Mark Nooth, and Officer
Serrano in which Plaintiff asserts Defendants violated his rights
to due process and equal protection under the United States
Constitution.

On October 28, 2013, Defendants filed a Motion for Summary

7 - OPINION AND ORDER

Judgment as to all of Plaintiff's claims.

On October 30, 2013, the Court issued a Summary Judgment Advice Notice to Plaintiff advising him that if he did not submit evidence in opposition to Defendants' Motion for Summary Judgment, summary judgment would be entered against him if it was appropriate.

The Court took Defendants' Motion for Summary Judgment under advisement on January 9, 2014.

## **STANDARDS**

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Washington Mut. Ins. v. United States*, 636 F.3d 1207, 1216 (9th Cir. 2011). *See also* Fed. R. Civ. P. 56(a).  The moving party must show the absence of a dispute as to a material fact.  *Rivera v. Philip Morris, Inc.*, 395 F.3d 1142, 1146 (9th Cir. 2005).  In response to a properly supported motion for summary judgment, the nonmoving party must go beyond the pleadings and show there is a genuine dispute as to a material fact for trial. *Id.*  "This burden is not a light one. . . .  The non-moving party must do more than show there is some 'metaphysical doubt' as to the material facts at issue." *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010) (citation omitted).

A dispute as to a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1061 (9th Cir. 2002)(quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). The court must draw all reasonable inferences in favor of the nonmoving party. *Sluimer v. Verity, Inc.*, 606 F.3d 584, 587 (9th Cir. 2010). "Summary judgment cannot be granted where contrary inferences may be drawn from the evidence as to material issues." *Easter v. Am. W. Fin.*, 381 F.3d 948, 957 (9th Cir. 2004)(citation omitted). A "mere disagreement or bald assertion" that a genuine dispute as to a material fact exists "will not preclude the grant of summary judgment." *Deering v. Lassen Cmty. Coll. Dist.*, No. 2:07-CV-1521-JAM-DAD, 2011 WL 202797, at *2 (E.D. Cal., Jan. 20, 2011) (citing *Harper v. Wallingford*, 877 F.2d 728, 731 (9th Cir. 1989)). When the nonmoving party's claims are factually implausible, that party must "come forward with more persuasive evidence than otherwise would be necessary." *LVRC Holdings LLC v. Brekka*, 581 F.3d 1127, 1137 (9th Cir. 2009)(citation omitted).

The substantive law governing a claim or a defense determines whether a fact is material. *Miller v. Glenn Miller Prod., Inc.*, 454 F.3d 975, 987 (9th Cir. 2006). If the resolution of a factual dispute would not affect the outcome of the claim, the court may grant summary judgment. *Id*.

**DISCUSSION**

As noted, Defendants move for summary judgment as to all of Plaintiff's claims.

**I.   Procedural Due Process**

Plaintiff asserts Defendants denied him procedural due process when they (1) provided him with ODOC Rules of Misconduct that were not the most current version of the Rules and (2) failed to notify Plaintiff at his hearing that he would receive an orange identification card and lose programming privileges if he was found to have violated ODOC Rules.

>    **A.   Defendants did not violate Plaintiff's right to procedural due process when they provided Plaintiff with an older version of the Rules of Misconduct.**

As noted, Plaintiff contends Defendants did not provide him with due process in connection with his disciplinary hearing because Defendants provided Plaintiff with ODOC Rules of Misconduct that were not the most current version of the Rules.

In *Wolff v. McDonnell* the Supreme Court set out the basic procedural due-process guarantees in the context of prison disciplinary hearings.  418 U.S. 539, 563-72 (1974).  In *Walker v. Sumner* the Ninth Circuit summarized the *Wolff* requirements as follows:

>    *Wolff* established five procedural requirements. First, "written notice of the charges must be given to the disciplinary-action defendant in order to inform him of the charges and to enable him to marshal the facts and prepare a defense."

*Wolff*, 418 U.S. at 564.  Second, "at least a brief period of time after the notice, no less than 24 hours, should be allowed to the inmate to prepare for the appearance before the Adjustment Committee."  *Id.*  Third, "there must be a 'written statement by the factfinders as to the evidence relied on and reasons' for the disciplinary action."  *Id.* (quoting *Morrissey v. Brewer*, 408 U.S. 471, 489 (1972)).  Fourth, "the inmate facing disciplinary proceedings should be allowed to call witnesses and present documentary evidence in his defense when permitting him to do so will not be unduly hazardous to institutional safety or correctional goals."  *Id.*, 418 U.S. at 566. Fifth, "[w]here an illiterate inmate is involved . . . or where the complexity of the issue makes it unlikely that the inmate will be able to collect and present the evidence necessary for an adequate comprehension of the case, he should be free to seek the aid of a fellow inmate, or . . . to have adequate substitute aid . . . from the staff or from a[n] . . . inmate designated by the staff."  *Id.* at 570.  The Court specifically held that the Due Process Clause does not require that prisons allow inmates to cross-examine their accusers, *id.* at 567-68, nor does it give rise to a right to counsel in the proceedings, *id.* at 569-70.

14 F.3d 1415, 1420 (9th Cir. 1994), *overruled on other grounds by Sandin v. Conner*, 515 U.S. 472, 482 (1995).

    The record reflects Plaintiff received written notice of the charges against him more than 24 hours before his disciplinary hearing and the notice contained sufficient facts to inform him of the grounds for the charges and the facts underlying those charges and to enable him to marshal the facts and to prepare a defense.

    On this record the Court concludes the fact that Defendants provided Plaintiff with a version of the ODOC Rules of

11 - OPINION AND ORDER

Conduct that was not the most current version did not violate Plaintiff's right to procedural due process.

**B. Defendants did not violate Plaintiff's right to procedural due process when they did not notify Plaintiff at his hearing that he would receive an orange identification card and lose programming privileges if he was found to have violated ODOC Rules.**

It is undisputed that before November 22, 2011, Plaintiff was at incentive Level 2 at SRCI.  It is also undisputed that on November 22, 2011, after Officer Serrano imposed the disciplinary sanction, Plaintiff's incentive level was reduced to Level 1, which required, among other things, that Plaintiff wear an orange identification card and barred Plaintiff from participating in inmate activities such as movies and evening recreation yard.

Plaintiff contends Defendants violated his rights to procedural due process when they failed to advise him that his incentive level would be reduced if he was found to have violated ODOC Rules.

Defendants, in turn, assert they did not violate Plaintiff's rights to due process because the decision to reduce Plaintiff's incentive level was a separate security decision made by supervising staff who were outside of the disciplinary process and who are not defendants in this action.  Defendants also assert inmates do not have any constitutionally protected right to a particular incentive level, and, therefore, Plaintiff did

not have a due-process right to be advised of a possible change in his incentive level.

### 1.    ODOC Incentive Level Program

As an incentive to participate in work and programs during incarceration, ODOC inmates can accumulate points that are converted at the end of each month to a monetary value to spend on canteen.  The Oregon Administrative Rules related to ODOC govern the manner in which points are assigned to various inmate programs and the monetary value assigned to the points. *See* Or. Admin. R. Ch. 291, Div. 77.

Inmates are assigned an incentive level that determines the services and privileges that inmates can receive. Inmates are generally eligible for promotion to higher incentive levels when they live in general population, comply with prescribed programming, and demonstrate good institutional behavior for a period designated by the Superintendent.  Inmates can make requests to their correctional counselors to be promoted.  A multi-disciplinary committee consisting of security and nonsecurity staff reviews inmate requests for promotion to higher incentive levels.  When an inmate receives a disciplinary sanction arising out of a single act of prohibited conduct, the inmate's incentive level is lowered one level by the correctional counselor who is alerted to the disciplinary sanction.

Inmates at Incentive Level 1 are eligible to

13 - OPINION AND ORDER

access any services and privileges "defined by rule."  Decl. of
Mark Peterson at ¶ 7.  Inmates at Incentive Level 1 are required
to wear orange identification cards to make them easily
recognized by security staff.  Inmates at Level 1 are not
authorized to participate in the majority of inmate activities.
According to Defendants, inmates at Level 1 may be searched more
frequently because generally "they have demonstrated an
unwillingness to engage in appropriate institutional behavior."
*Id*. at ¶ 8.

Inmates at Incentive Level 2 do not have to wear
orange identification cards.  They are eligible for all of the
services and privileges available to inmates at Incentive Level 1
and may spend $10.00 above the weekly base level for canteen,
apply for membership in available inmate clubs and special-
interest groups, purchase a personal television and CDs, attend
and/or participate in special events, and receive additional
visitor points.

To achieve promotion to Level 2, an inmate must
live in general population 180 consecutive days without major
misconduct and 90 days without a "program fail."  Petersen Decl.
at ¶ 10.

###    2.    Plaintiff's Incentive-Level Reduction

As noted, on November 22, 2011, Plaintiff received
a disciplinary sanction that included the loss of privileges

14 - OPINION AND ORDER

until November 28, 2011.  According to Defendants, Plaintiff's disciplinary sanction constituted sufficient misconduct according to a correctional counselor (not named as a defendant in this matter) to reduce Plaintiff's incentive level by one level to Level 1.  Pursuant to ODOC Rules Plaintiff began to earn credit towards Level 2 after his disciplinary sanction was finished on November 28, 2011.

As noted, the record reflects the decision to lower Plaintiff's incentive level was not made by any of the named defendants in this matter.  Defendants, therefore, are entitled to summary judgment as to Plaintiff's due-process claim related to the reduction in his incentive level.

In addition, even if Plaintiff had named as a defendant the individual responsible for the decision to reduce his incentive level, the Ninth Circuit has held inmates do not have a federally protected interest in any particular incentive level.  *See, e.g., Hernandez v. Johnston*, 833 F. 2d 1316, 1318 (9th Cir. 1987)("[A] prisoner has no constitutional right to a particular classification status.  In *Moody v. Daggett*, 429 U.S. 78 (1976), the Supreme Court . . . expressly rejected a claim that 'prisoner classification and eligibility for rehabilitative programs in the federal system' invoked due process protections. 429 U.S. at 88 n.9."); *Cummer v. Tilton*, 465 F. App'x 598, 599 (9th Cir. 2012) ("The district court properly dismissed Cummer's

15 - OPINION AND ORDER

claims arising from his classification . . . because no [due-process] interest is implicated.").

On this record the Court, therefore, concludes Plaintiff did not have a federally protected right to a particular incentive level.  Accordingly, the Court grants Defendants' Motion for Summary Judgment on Plaintiff's claim for violation of his right to procedural due process.

II.  **Substantive Due Process**

Plaintiff asserts Defendants violated his right to substantive due process when (1) Officer Serrano found Plaintiff violated Rule 1.05 because he did so based on insufficient evidence, (2) Defendants reduced his incentive level, and (3) Defendants required Plaintiff to work as an orderly wheelchair-pusher without compensation for 30 days after November 28, 2011.

A.  **Officer Serrano's conclusion that Plaintiff violated Rule 1.05.**

In the context of prison disciplinary hearings, substantive due process requires only that there is "some evidence" to support a disciplinary decision.  *Superintendent, Mass. Corr. Inst., Walpole v. Hill*, 472 U.S. 445, 454 (1985). *See also Bruce v. Ylst*, 351 F.3d 1283, 1287 (9th Cir. 2003). "Under *Hill*, we do not examine the entire record, independently assess witness credibility, or reweigh the evidence; rather, "'the relevant question is whether there is any evidence in the

16 - OPINION AND ORDER

record that could support the conclusion.'" *Bruce*, 351 F.3d at 1287 (quoting *Hill*, 472 U.S. at 455-56).

ODOC Rules provide an inmate violates Rule 1.05 (Property 1) when he

> destroys, abuses, alters, damages, defaces, misuses, tampers with, or wastes materials or property, or fails to properly protect or produce property issued to him/her in a timely manner and:
>
> * * *
>
> (D) 1.05.04 The misconduct includes possession of an unauthorized or altered blade, such as a razor blade or pencil sharpener.

Or. Admin. R. 291-105-0015(1)(b).  The record reflects there was not any dispute that the correctional officer found a loose razor blade from a pencil sharpener in Plaintiff's hygiene bag.  The record also reflects the pencil sharpener in Plaintiff's cell was broken and missing the blade.  Thus, there was evidence with sufficient indicia of reliability to support Officer Serrano's conclusion that Plaintiff violated Rule 1.05.

Accordingly, the Court concludes Defendants did not violate Plaintiff's substantive due-process rights when Officer Serrano concluded Plaintiff violated Rule 1.05.

**B.  Plaintiff's decreased incentive level.**

Plaintiff asserts his incentive-level reduction violated his right to substantive due process.  As noted, however, the Supreme Court expressly stated:

The same is true of prisoner classification and

17 - OPINION AND ORDER

> eligibility for rehabilitative programs in the
> federal system.  Congress has given federal prison
> officials full discretion to control these
> conditions of confinement, 18 U.S.C. s 4081, and
> [inmates have] no legitimate statutory or
> constitutional entitlement sufficient to invoke
> due process.

*Moody*, 429 U.S. at 88 n.9.  Moreover, the Ninth Circuit recently affirmed a district court's dismissal of an inmate's substantive due-process claim:

> The district court properly dismissed Adams's
> Fourteenth Amendment due process claim because
> Adams has no liberty interest in his
> classification status.  *See Sandin v. Conner*, 515
> U.S. 472, 484, 115 S. Ct. 2293, 132 L. Ed.2d 418
> (1995)(liberty interest arising from state laws or
> policies "will be generally limited to freedom
> from restraint which . . . imposes atypical and
> significant hardship on the inmate in relation to
> the ordinary incidents of prison life"); *Myron v.
> Terhune*, 476 F.3d 716, 718 (9th Cir. 2007)(prison
> classification does not implicate a state-created
> liberty interest).

*Adams v. Small*, No. 12-55328, 2013 WL 5568232, at *1 (9th Cir. Oct. 10, 2013).

The Court, therefore, concludes Plaintiff does not have a substantive due-process right in a particular classification. Accordingly, the Court concludes Defendants did not violate Plaintiff's substantive due-process rights when Plaintiff's classification level was reduced to Level 1.

**C.  Plaintiff's work as an orderly.**

Plaintiff worked as an orderly wheelchair-pusher at SRCI from August 26, 2011, to November 28, 2011.  On November 28,

2011, Plaintiff was removed from his orderly job due to the disciplinary sanction imposed by Officer Serrano.   The "supervising officer," however, requested Plaintiff remain in his position as an orderly because Plaintiff had been a good worker. Peterson Decl. at ¶ 14.   Plaintiff was reassigned to the orderly position, but he was required to complete a 30-day period without a program fail before he was allowed to earn points for his orderly assignment.   Plaintiff completed the 30-day period successfully and began receiving points for his assignment in December 2011.

Plaintiff asserts Defendants violated his right to substantive due process when they required him to work without earning points for 30 days after November 28, 2011.   Plaintiff, however, does not establish any of the named Defendants participated in or played any part in the decision to reassign Plaintiff to the orderly position or to require a 30-day trial period.   In addition, the Ninth Circuit has held the state does not deprive inmates of a constitutionally protected liberty interest by forcing him to work without pay.   *See Piatt v. MacDougall*, 773 F.2d 1032, 1035 (9th Cir. 1985)("We need not reach that due process question because the state has not deprived Piatt of a constitutionally protected liberty interest. The Thirteenth Amendment does not prohibit involuntary servitude as part of imprisonment for a crime.   *See Draper v. Rhay*, 315

F.2d 193, 197 (9th Cir. 1963).").  *See also Serra v. Lappin*, 600 F.3d 1191, 1196 (9th Cir. 2010)("[P]risoners do not have a legal entitlement to payment for their work, and the Due Process Clause protects only against deprivation of existing interests in life, liberty, or property.").

The Court, therefore, concludes Defendants did not violate Plaintiff's rights to substantive due process when they required Plaintiff to work as an orderly without accruing points for 30 days after November 28, 2011.  Accordingly, the Court grants Defendants' Motion for Summary Judgment as to Plaintiff's claim for violation of substantive due process.

## III. Equal Protection

Plaintiff asserts Defendants violated his right to equal protection when they required him to wear an orange identification badge and prohibited him from participating in numerous programs when he was at Incentive Level 1.

The Equal Protection Clause "directs that 'all persons similarly circumstanced shall be treated alike.'"  *Plyler v. Doe*, 457 U.S. 202, 216.  To establish that Defendants violated his right to equal protection, Plaintiff must show either that (1) Defendants acted with an intent or purpose to discriminate against him based upon membership in a protected class, *Thornton v. City of St. Helens*, 425 F.3d 1158, 1166–67 (9th Cir. 2005), or that (2) Defendants treated Plaintiff differently than similarly

situated individuals and there was not any rational basis for the difference in treatment, *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000).

Plaintiff does not assert and the record does not reflect that Plaintiff is a member of a protected class. To establish that Defendants violated his rights to equal protection, therefore, Plaintiff must show Defendants treated him differently from similarly situated individuals and that there was not any rational basis for the difference in treatment.

The record reflects Defendants treated Plaintiff in the same manner as all inmates at Level 1. Plaintiff does not point to any evidence in the record that other inmates at Level 1 were not required to wear orange identification cards or were allowed to participate in inmate activities beyond those allowed to Plaintiff. The Court, therefore, concludes Plaintiff has not established Defendants violated Plaintiff's right to equal protection by requiring him to wear an orange identification card and barring him from participating in various inmate activities when Plaintiff's incentive level was reduced to Level 1.

Accordingly, the Court grants Defendants' Motion for Summary Judgment as to Plaintiff's claim for violation of his right to equal protection.

21 - OPINION AND ORDER

<u>**CONCLUSION**</u>

For these reasons, the Court **GRANTS** Defendants' Motion (#41)

for Summary Judgment and **DISMISSES** this matter **with prejudice**.

IT IS SO ORDERED.

DATED this 10th day of March, 2014.


/s/ Anna J. Brown

_____
ANNA J. BROWN
United States District Judge


22 - OPINION AND ORDER